The Honorable Judge Lauren King

_____ FILED        _____ ENTERED
_____ LODGED    _____ RECEIVED

**SEP 08 2025**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 2:25-cr-00005-LK |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| MAYHEM SERVICES, LLC, | |
| Defendant. | |

The United States, through Acting Assistant Attorney General Adam R.F. Gustafson and Senior Trial Attorney Ryan Connors of the U.S. Department of Justice Environment and Natural Resources Division, Mayhem Services, LLC, and its attorney, Jeffrey Kradel, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.     **The Charge**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the charge contained in the Superseding Information: Lacey Act Trafficking, in violation of Title 16, United States Code, Sections 3372(a)(1), 3372(a)(2)(A), 3372(a)(4), and 3373(d)(2). Defendant understands the Superseding Information charges conduct that

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

1  Defendant, through its agents and employees, directly committed and acts Defendant

2  aided and abetted others to commit, pursuant to 18 U.S.C. Section 2(a).

3      By entering a plea of guilty, Defendant hereby waives all objections to the form of

4  the Superseding Information.  Defendant further understands that before entering any

5  guilty plea, Defendant's authorized representative will be placed under oath.  Any

6  statement given by Defendant under oath may be used by the United States in a

7  prosecution for perjury or false statements.

8      2.    **Elements of the Offenses**.  The elements of Lacey Act Trafficking to

9  which Defendant is pleading guilty are as follows:

10         a.    The Defendant acted through its agents and employees, who were

11  acting within the scope of their agency and employment for the intended benefit, at least

12  in part, of Defendant;

13         b.    The Defendant knowingly engaged in conduct that involved the sale

14  and purchase of wildlife;

15         c.    The Defendant knowingly transported or attempted to transport the

16  wildlife;

17         d.    In the exercise of due care, the Defendant should have known the

18  wildlife was taken or possessed in violation of, or in a manner unlawful under, any law,

19  regulation, or treaty of the United States or in violation of foreign law.

20  The elements of Aiding and Abetting are:

21         a.    Someone else committed Lacey Act Trafficking;

22         b.    Defendant acted through its agents and employees, who were acting

23  within the scope of their agency and employment for the intended benefit, at least in part,

24  of Defendant;

25         c.    Defendant aided, counseled, commanded, induced, or procured that

26  person with respect to at least one element of Lacey Act Trafficking;

27         d.    Defendant acted before the crime was completed.

28

Plea Agreement - 2
UNITED STATES v. MAYHEM, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

1       3.     **The Penalties**. Defendant understands that the statutory penalties

2 applicable to the offense to which Defendant is pleading guilty are as follows:

3          a.     A maximum term of probation of five years, a fine of up to $200,000

4 or twice the gross gain or loss, and a mandatory special assessment of $125.

5       Defendant understands that as a part of any sentence, in addition to any term of

6 probation and/or fine that is imposed, the Court may order Defendant to pay restitution to

7 any victim of the offense, as required by law.

8       Defendant further understands that the consequences of pleading guilty may

9 include the forfeiture of certain property, either as a part of the sentence imposed by the

10 Court, or as a result of civil judicial or administrative process.

11       Defendant agrees to submit a completed Financial Disclosure Statement as

12 requested by the Government.

13       4.     **Rights Waived by Pleading Guilty.** Defendant understands that by

14 pleading guilty, Defendant knowingly and voluntarily waives the following rights:

15          a.     The right to plead not guilty and to persist in a plea of not guilty;

16          b.     The right to a speedy and public trial before a jury of Defendant's

17 peers;

18          c.     The right to the effective assistance of counsel at trial, including, if

19 Defendant could not afford an attorney, the right to have the Court appoint one for

20 Defendant;

21          d.     The right to be presumed innocent until guilt has been established

22 beyond a reasonable doubt at trial;

23          e.     The right to confront and cross-examine witnesses against Defendant

24 at trial;

25          f.     The right to compel or subpoena witnesses to appear on Defendant's

26 behalf at trial;

27

28

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

1             g.     The right to testify or to remain silent at trial, at which trial such

2 silence could not be used against Defendant; and

3             h.     The right to appeal a finding of guilt or any pretrial rulings.

4      5.     **United States Sentencing Guidelines**. Defendant understands and

5 acknowledges that the Court must consider the United States Sentencing Guidelines and

6 possible departures under the Sentencing Guidelines together with the other factors set

7 forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and

8 circumstances of the offense; (2) the history and characteristics of Defendant; (3) the

9 need for the sentence to reflect the seriousness of the offense, to promote respect for the

10 law, and to provide just punishment for the offense; (4) the need for the sentence to

11 afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect

12 the public from further crimes of Defendant; (6) the need to provide Defendant with

13 educational and vocational training, medical care, or other correctional treatment in the

14 most effective manner; (7) the kinds of sentences available; (8) the need to provide

15 restitution to victims; and (9) the need to avoid unwarranted sentence disparity among

16 defendants involved in similar conduct who have similar records. Accordingly,

17 Defendant understands and acknowledges that:

18             a.    The Defendant understands and acknowledges that the Sentencing

19 Guidelines, including Chapter Eight that provides guidance for the sentencing of

20 corporate defendants, may be considered by the Court, except that, pursuant to U.S.S.G.

21 §§ 8C2.1 and 8C2.10, the guidelines which pertain to the sentencing of organizations do

22 not determine the fine range in cases involving environmental crimes. Instead, the fine is

23 to be determined under 18 U.S.C. §§ 3553 and 3571. All other sections of Chapter Eight

24 of the Sentencing Guidelines that are applicable to corporate defendants are applicable to

25 this case;

26

27

28

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7.    **Statement of Facts**. Defendant admits it is guilty of the charged offense. The parties agree on the facts contained in Exhibit 1.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

8.    **Imposition of a Fine.** The parties agree to jointly recommend the Court impose a fine of $75,000 as part of the sentence. If the Court issues a fine, it will be payable immediately unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The parties are free to make any recommendation to the Court regarding a payment schedule. Pursuant to 34 U.S.C. § 20101(b)(1)(A), any fine imposed will be paid by the clerk into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward fund. 16 U.S.C. § 3375(d).

9.    **Public Statement.** The parties agree to jointly recommend that the Court require the Defendant to make a written public statement detailing the Defendant's

Plea Agreement - 5
UNITED STATES v. MAYHEM, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

contrition for the offense conduct and emphasizing the importance of hunting, guiding, and wildlife regulations. The language of the public statement must be agreed upon by the United States prior to entry of the Defendant's plea. The public statement must be posted and readily available on the following webpage and account: AdventuresWithMayhemOutfitters.com and Facebook account Adventures with Mayhem Outfitters. The Defendant agrees to maintain each of these accounts and webpages and the public statement on those accounts and webpages for a period of one year from the date of sentencing. The Defendant also agrees to publish the public statement in a national or regional hunting or guiding magazine mutually agreed upon with the Government within three months from the date of sentencing.

10.     **Abandonment of Contraband**.  Defendant also agrees that, if any federal or foreign law enforcement agency seized any illegal contraband, including wildlife, that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

11.     **Application of the Agreement**.  This Plea Agreement will bind the Defendant and all its successors and assigns. No change in name, change in corporate or individual control, corporate reorganization, change in ownership, merger, change of legal status, or similar action shall alter the responsibilities of the Defendant under this Agreement. The Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement. Defendant agrees to remain in good standing with all Washington corporation requirements and regulations during any period of probation imposed by the Court and while it owes a fine.

12.     **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the Environmental Crimes Section of the United States Department of Justice agrees not to prosecute Defendant for any additional offenses known to it as of the acceptance of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and will move to dismiss the remaining

counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the Environmental Crimes Section will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence or charged in the Indictment. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct

Plea Agreement - 7
UNITED STATES v. MAYHEM, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC 20002
(202) 305-0321

1    into consideration by requesting the Court to apply additional adjustments or

2    enhancements in its Sentencing Guidelines calculations in order to increase the applicable

3    advisory Guidelines range, and/or by seeking an upward departure or variance from the

4    calculated advisory Guidelines range.  Under these circumstances, the United States is

5    free to seek such adjustments, enhancements, departures, and/or variances even if

6    otherwise precluded by the terms of the Plea Agreement.

7         14.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

8         Defendant acknowledges that, by entering the guilty plea required by this Plea

9    Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

10   pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

11   judgment of conviction.  Defendant waives to the full extent of the law:

12        a.    Any right conferred by Title 18, United States Code, Section 3742,

13   to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

14   restitution order, probation or supervised release conditions, or forfeiture order (if

15   applicable); and

16        b.    Any right to bring a collateral attack against the conviction and

17   sentence, including any restitution order imposed, except as it may relate to the

18   effectiveness of legal representation.

19        If Defendant breaches this Plea Agreement at any time by appealing or collaterally

20   attacking (except as to effectiveness of legal representation) the conviction or sentence in

21   any way, the United States may prosecute Defendant for any counts, including those with

22   mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

23   Agreement.

24        15.    **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

25   this Plea Agreement freely and voluntarily, and that no threats or promises were made to

26   induce Defendant to enter a plea of guilty other than the promises contained in this Plea

27   Agreement or set forth on the record at the change of plea hearing in this matter.

28

Plea Agreement - 8
UNITED STATES v. MAYHEM, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

1    16.    **Statute of Limitations**. In the event this Plea Agreement is not accepted

2 by the Court for any reason, or Defendant breaches any of the terms of this Plea

3 Agreement, the statute of limitations shall be deemed to have been tolled from the date of

4 the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea

5 Agreement by the Court; or (2) thirty days following the date on which a breach of the

6 Plea Agreement by Defendant is discovered by the United States Attorney's Office.

7    17.    **Dismissal of Counts**. If this Plea Agreement is accepted by the Court and

8 the Defendant does not breach any of its terms, the United States will request after

9 sentencing that that Court dismiss all charges and forfeiture allegations in the Indictment.

10    18.    **Completeness of Plea Agreement**. The United States and Defendant

11 acknowledge that these terms constitute the entire Plea Agreement between the parties,

12 except as may be set forth on the record at the change of plea hearing in this matter. This

13 Plea Agreement binds only the Environmental Crimes Section of the United States

14 Department of Justice. It does not bind any other United States Attorney's Office or any

15 other office or agency of the United States, or any state or local prosecutor.

16

17 / /

18

19 / /

20

21 / /

22

23

24

25

26

27

28

Plea Agreement - 9
UNITED STATES v. MAYHEM, et al., CR 25-5 LK

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

Dated this 8th day of September, 2025.


On behalf of the Defendant Mayhem Services, LLC, I have been authorized to sign this Agreement and bind the Defendant. The Defendant has been advised by its attorneys of its rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this Agreement. The Defendant voluntarily agrees to all of the terms of this Agreement. No promises or inducements have been made to the Defendant other than those contained in this Agreement. No one has threatened or forced the Defendant in any way to enter into this Agreement. The Defendant is satisfied by the representation of its attorneys in this matter.


BRANDEN TRAGER
Authorized Representative


Jeffrey Kradel
Kradel Defense PLLC
Attorney for Defendant



Adam Gustafson
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Ryan Connors
Senior Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

ENVIRONMENT AND
NATURAL RESOURCES DIV.
150 M ST. NE,
WASHINGTON, DC  20002
(202) 305-0321

EXHIBIT 1

<u>Joint Factual Statement</u>

1.     Defendants TRAGER and MAYHEM, acting through its agents and employees, including TRAGER, who were acting within the scope of their agency and employment for the intended benefit, at least in part, of MAYHEM, admit guilt to the charged offense. The parties agree on the following facts:

      a.     The Lacey Act made it unlawful for any person, including a corporation, to knowingly engage in conduct that involved the sale and purchase of wildlife and to knowingly transport and attempt to transport said wildlife that in the exercise of due care they should have known were taken and possessed in violation of, and in a manner unlawful under, any law, regulation, and treaty of the United States and in violation of foreign law. 16 U.S.C. §§ 3372(a)(1), 3372(a)(2)(A), 3372(a)(4), and 3373(d).

      b.     Under the Lacey Act, it was deemed a sale or purchase for a person for money or other consideration to offer or provide guiding, outfitting, or other services; or a hunting license or permit for the illegal taking acquiring, receiving, transporting, or possessing of wildlife. 16 U.S.C. § 3372(c).

      c.     The Migratory Bird Treaty Act ("MBTA") implemented U.S. treaties with Canada, Japan, Mexico, and Russia to ensure sustainable populations of migratory birds. The MBTA made it unlawful, at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export, any migratory bird native to the United States or its territories without a permit. 16 U.S.C. § 703.

      d.     "Take" meant to pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to do the same. 50 C.F.R. § 10.12.

e.    Under the MBTA it was illegal:

1. to take migratory game birds from or by means, aid, or use of any motor vehicle or motor-driven land conveyance. 50 C.F.R. § 20.21(d).

2. to take migratory game birds by any means or aid of any motor-driven land, water, or air conveyance, or any sailboat used for the purpose of or resulting in the concentrating, driving, rallying, or stirring up of any migratory bird. 50 C.F.R. § 20.21(h)

3. to take in any one calendar day more than the daily bag limit or possess more migratory game birds taken in the United States than the possession limit. 50 C.F.R. §§ 20.24, 20.33.

4. to kill or cripple any migratory game bird without making a reasonable effort to retrieve the bird, and retain it in their actual custody, at the place where taken or between that place and either (a) their automobile or principal means of land transportation; or (b) their personal abode or temporary or transient place of lodging; or (c) a migratory bird preservation facility; or (d) a post office; or (e) a common carrier facility. 50 C.F.R. § 20.25.

5. to transport, possess, or have in custody any migratory game bird or part thereof taken in violation of the MBTA. 50 C.F.R. §§ 20.31, 20.41.

6. to transport migratory birds belonging to another person unless such bird was tagged as required 50 C.F.R. § 20.42.

f.    Every migratory game bird wounded by hunting and reduced to possession by the hunter was to be immediately killed and become part of the daily bag limit. 50 C.F.R. § 20.38.

1    g.    The harlequin duck (*Histrionicus histrionicus*) was a small sea duck

2  with a habitat ranging from Alaska to California prized by hunters.

3    h.    The Washington Division of Fish and Wildlife closed harlequin

4  hunting for the 2022 – 2023 season, prohibiting any take or harvest. Wash. Admin. Code

5  220-416-060 (2022).

6    i.    It was lawful in British Columbia, Canada, for hunters to take two

7  harlequins per day during the 2022 – 2023 season. British Columbia Wildlife Act

8  ("B.C.W.A."), Hunting Regulation § 12(a)(vi).

9    j.    British Columbia law regulated the hunting and guiding of hunts for

10  birds:

11    1.    All birds listed in the Migratory Birds Convention Act, which

12        included the harlequin, were listed as game birds. B.C.W.A.,

13        Designation and Exemption Regulation § 14(b). Game birds

14        were classified as small game. *Id.* § 15(j).

15    2.    It was unlawful for a person to guide for game or offer to

16        guide for game unless they held a guide outfitter license or

17        accompanied or assisted a person to hunt game birds or small

18        game on land other than Crown land. B.C.W.A. §§ 48(1)(a),

19        (d).

20    3.    A British Columbia guide outfitter license was only eligible

21        for Canadian citizens or permanent residents. B.C.W.A. §

22        51(1)(a)(i).

23    4.    A "guide" meant a person who, for compensation or reward

24        received or promised, accompanied and assisted another

25        person to hunt wildlife, but did not include a guide for fish.

26        B.C.W.A. § 1(1).

27    5.    A "guide outfitter" meant a person licensed as a guide

28        outfitter under this Act. *Id.*

k.    TRAGER and MAYHEM knowingly engaged in conduct that involved the sale and purchase of wildlife and knowingly transported and attempted to transport said wildlife that in the exercise of due care they should have known was taken and possessed in violation of and in a manner unlawful under any foreign law or any law, regulation, and treaty of the United States, or to attempt to do so, or to aid and abet another in the commission of such conduct.

l.    Throughout the relevant period, TRAGER and MAYHEM guided hunts in British Columbia, Canada, for the harlequin and other birds without the required guide outfitter license. TRAGER and MAYHEM received payments in exchange for guiding waterfowl hunting trips in Washington and Canada, transported hunters across the U.S. border, and guided hunts in Canada.

m.    Also during the relevant period, TRAGER and MAYHEM aided and abetted the acceptance of money to taxidermy birds hunted in Canada and export them to the United States.

n.    For example, between November 14, 2022, and November 18, 2022, in exchange for money, TRAGER professionally guided a hunting group in British Columbia, Canada, resulting in the shooting of birds. TRAGER drove the hunters across the border at Blaine, Washington. During that trip, and others, TRAGER facilitated providing the hunters' birds for a taxidermist in preparation for exportation to the United States. TRAGER professionally guided a similar trip in Canada between December 14, 2022, and December 19, 2022.

o.    Further, between January 6, 2023, and January 8, 2023, TRAGER guided a hunting group near Tacoma, Union, and Long Beach in the Western District of Washington. During the hunting trip, TRAGER and MAYHEM engaged in violations of the MBTA.

/ /

/ /

/ /